UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARBARA ANN LEWIS,

    **Plaintiff,**

vs.

                                                          Case No. 8:14-cv-2547-T-27TGW

CITY OF ST. PETERSBURG,

    **Defendant.**
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Dispositive Motion for Summary Judgment (Dkt. 18), to which Plaintiff has responded in opposition (Dkt. 25). Upon consideration, Defendant's motion is denied.

### *Background*

Plaintiff Barbara Ann Lewis worked for Defendant City of St. Petersburg as a Data Entry Operator II in the Water Resources Department. (Dkt. 21-1 at 6). Plaintiff alleges that she was fired on October 11, 2011, in retaliation for her complaints of race discrimination, in violation of 42 U.S.C. § 1981 and the Florida Civil Rights Act (FCRA). The City maintains that Plaintiff's job was eliminated as part of a broader reorganization. The relevant facts follow.

On June 10, 2010, Plaintiff was called into a meeting with the Director of the Water Resources Department, George Cassady, and the Assistant Director, Dwight Wilson. (Dkt. 21-1 at 20-21; Dkt. 20-1 at 5, 31). According to Plaintiff, Cassady wanted to talk to her because he did not understand why Plaintiff was not "grinning, bubbly or smiling" when she spoke to him. (Dkt. 21-1 at 20-21). Plaintiff disagreed, and told Cassady that she had always perceived her interaction with him to be polite, courteous, and respectful of his position. (*Id.* at 23).

Approximately two months later, in August 2010, Wilson told Plaintiff that Cassady was still not happy with the way that Plaintiff spoke to him. (*Id.* at 23, 64). Plaintiff explained to Wilson that she said "good morning" to Cassady the same way she did to other employees. (*Id.* at 23-24). Wilson advised Plaintiff that when she heard Cassady coming down the hall, she should raise her head, smile, stand up, and say, "Hello, George." (*Id.* at 24). Wilson told Plaintiff to do this not just for two weeks, but for a while. (*Id.*). Plaintiff, who is African-American, testified that even though she spoke to Cassady "just like other white employees did, that he was not happy, 'cause I wasn't grinning, bubbly and smiling." (*Id.* at 43; Dkt. 2 at ¶ 12). Plaintiff believed that she was singled out based on her race because white employees were not subject to similar discussions. (Dkt. 21-1 at 74).

In November 2010, Cassady told Plaintiff's manager not to deliver Plaintiff's annual performance review until he had an opportunity to provide input into the areas of customer service, interpersonal skills, and productivity. (Dkt. 20-1 at 17). When Plaintiff was given her evaluation in April 2011, she received lower scores than she had in the past, partly due to her interactions with Cassady. (Dkt. 21-1 at 57-58, 60; Dkt. 18-2 at 5).

On May 17, 2011, Plaintiff filed an EEOC Charge, alleging race discrimination based on the performance evaluation and reprimand "for not 'grinning' or being 'bubbly' when speaking to White employees." (Dkt. 21-1 at 57, 59; Dkt. 18-2 at 5). The City received the Charge on May 27, 2011. (Dkt. 18-2 at ¶ 5). Cassady was aware of the EEOC Charge by at least June or July 2011. (Dkt. 20-1 at 36).

On September 14, 2011, a mediation was held regarding the EEOC charge. (*Id.* at 35-37; Dkt. 21-1 at 64). On September 26, 2011, Cassady sent an email to Michael Connors, the

2

Administrator of Public Works, requesting elimination of Plaintiff's position as a Data Entry Operator II, along with three other positions. (Dkt. 19-1 at 3, 10-11, 13). Of the four positions, two positions were held by white employees and two were held by African-American employees. (Dkt. 21-1 at 40-41; Dkt. 20-1 at 46). Cassady proposed replacing the eliminated positions with different positions, in order to achieve greater efficiency. (Dkt. 19-1 at 7-8).

With respect to Plaintiff's position, Cassady explained to Connors that Plaintiff's services had "changed considerably to the point where they were no longer necessary." (*Id.* at 8-9). Cassady testified that over fifty percent of Plaintiff's job involved paper filing, and that paper filing ceased after the Department's transition to an electronic work order system. (Dkt. 20-1 at 43-44). Cassady explained that Plaintiff's remaining data entry tasks "would have been probably taken over by some of the other staff." (*Id.* at 44).

Connors approved Cassady's recommendation. (Dkt. 19-1 at 8, 11). Plaintiff was terminated on October 11, 2011. (Dkt. 20-1 at 7). In February 2012, the City reclassified Plaintiff's former position of Data Entry Operator II as a "Water Reclamation Plant Operation Specialist." (Dkt. 27 at 14-15).

The City maintains that Cassady contemplated eliminating Plaintiff's position before she filed her EEOC Charge in May 2011 – effectively negating any inference that Cassady's decision was in retaliation for Plaintitff's protected activity. Specifically, Evelyn Rosetti, the Manager of Special Projects, avers that she met with Cassady in March 2011 in order to identify positions that could be reclassified in order to more efficiently serve the Water Resources Department. (Dkt. 18-1 at ¶ 4). On March 22, 2011 a document was created identifying five positions for adjustment, including Plaintiff's position. (*Id.* & Exh. A).

By contrast, Plaintiff maintains that Cassady's decision was motivated by a retaliatory animus. Three to four days prior to Plaintiff's termination, Cassady told Debra Bynum, a Senior Management Methods Analyst, that he would be terminating Plaintiff and three other employees "because they were thorns in his side, and he had to save face." (Dkt. 27 at 3-6). According to Bynum, Cassady did not explain what he meant by this statement, but he kept repeating it. (*Id.* at 9, 13, 24-25).

### *Procedural History*

Plaintiff initiated this action in state court, alleging unlawful retaliation in violation of the FCRA. (Dkt. 1-2). On August 11, 2014, the state court denied the City's motion for summary judgment. (Dkt. 1-24). On August 22, 2014, Plaintiff filed an amended complaint, adding a parallel retaliation claim pursuant to 42 U.S.C. § 1981. (Dkt. 2). The City then removed the case to this court on October 8, 2014. (Dkt. 1).

In her response in opposition to the City's motion for summary judgment, Plaintiff first argues that the state court's prior denial of summary judgment should control the disposition of the instant motion. As Plaintiff acknowledges, however, this Court may modify non-final state court orders, just as a state court may reconsider its own rulings at any time before final judgment. *Hill v. U. S. Fid. & Guar. Co.*, 428 F.2d 112, 114 (5th Cir. 1970); *Ware v. Fleetboston Fin. Corp.*, 180 F. App'x 59, 64, (11th Cir. 2006); *see also Fabre v. Bank of Am. Bank, NA*, 523 F. App'x 661, 664 (11th Cir. 2013). For that reason, and because the action includes a new claim and new evidence, the City's motion for summary judgment and Plaintiff's response are considered on the merits.

### *Standard*

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine

factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-08 (11th Cir. 1991)). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). The nonmoving party must "go beyond the pleadings," and designate specific facts showing that there is a genuine dispute. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

### *Discussion*

Section 1981 and the FCRA prohibit employers from retaliating against employees who engage in statutorily protected activity. Fla. Stat. § 760.10(7); *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257-58 (11th Cir. 2012).[1] Retaliation claims brought pursuant to the FCRA and Section 1981 are analyzed in the same manner as Title VII claims, which are subject to the

---

[1] As explained in the December 9, 2014 Order on the City's Rule 12(b)(6) motion to dismiss, Plaintiff's Section 1981 claim is construed as having been brought pursuant to 42 U.S.C. § 1983. (Dkt. 9 at 3 n.4).

familiar *McDonnell Douglas* burden-shifting framework. *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998).

A plaintiff must first establish a *prima facie* case of retaliation by demonstrating that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Chapter 7 Trustee*, 683 F.3d at 1258. Once the plaintiff establishes a *prima facie* case, the employer must articulate a legitimate, non-discriminatory reason for the challenged employment action. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). If the employer discharges its burden, the plaintiff must produce evidence that would permit a reasonable factfinder to conclude that the employer's proffered reason is a mere pretext for unlawful discrimination. *Id.* at 1243. Ultimately, the plaintiff must demonstrate that the desire to retaliate was the but-for cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013); *Booth v. Pasco Cnty.*, 757 F.3d 1198, 1207 (11th Cir. 2014).[2]

---

[2] Both parties assume that a showing of but-for causation is required at the *prima facie* stage, pursuant to the Supreme Court's decision in *Nassar*, which involved an appeal from a jury trial. *See* 133 S.Ct. at 2524. In the summary judgment context, unpublished decisions from the Eleventh Circuit suggest that a showing of but-for causation is not required at the *prima facie* stage, but remains the plaintiff's ultimate burden. *See Smith v. City of Fort Pierce*, 565 F. App'x 774, 778-79 (11th Cir. 2014) (considering but-for causation as ultimate question, assuming plaintiff had met her *prima facie* case and citing *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir.2013)); *Butterworth v. Lab. Corp. of Am. Holdings*, 581 F. App'x 813, 816-17 (11th Cir. 2014); *but see Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs*, No. 13-14477, ___ F. App'x ___, 2015 WL 1475586, at *3 (11th Cir. Apr. 2, 2015) (stating that causation element of the *prima facie* case requires but-for causation); *Jones v. Suburban Propane, Inc.*, 577 F. App'x 951, 954-55 (11th Cir. 2014). Published decisions from outside the Eleventh Circuit have expressly held, or implicitly assumed, that but-for causation is the plaintiff's ultimate burden, and does not impose a more stringent causation standard at the *prima facie* stage. *Foster v. Univ. of Md.-E. Shore*, No. 14-1073, ___ F.3d ___, 2015 WL 2405266, at *4-5 (4th Cir. May 21, 2015); *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013); *Feist v. La., Dep't. of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). In this action, Plaintiff produces sufficient evidence to permit a jury to conclude that Plaintiff's protected activity was the

## 1.  *Prima facie case*

The City does not dispute that Plaintiff engaged in statutorily-protected activity or that she suffered a materially adverse employment action. The City instead argues that Plaintiff cannot demonstrate the requisite causal connection.

"To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (internal quotation marks omitted); *Jackson v. United Parcel Serv., Inc.*, 593 F. App'x 871, 877 (11th Cir. 2014). Temporal proximity between protected activity and an adverse employment action may support an inference of causation, although "mere temporal proximity, without more, must be very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir.2007) (internal quotation marks omitted). In the absence of other evidence, a period of three months between the protected activity and the adverse employment action is not sufficient to establish causation. *Id.*; *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir.2006).

Although Connors made the ultimate decision to eliminate Plaintiff's position, the City does not dispute Cassady's status as the relevant decisionmaker. (*E.g.*, Dkt. 18 at 7, 11); *see Sims v. MVM, Inc.*, 704 F.3d 1327, 1335 n.6 (11th Cir. 2013) (noting that, under "cat's paw" theory, a defendant may be liable based on animus held by supervisor who is not charged with making the ultimate employment decision). Cassady admits that he was aware of Plaintiff's EEOC case by June or July 2011, prior to recommending her position for elimation in the September 26, 2011 email to Connors. (Dkt. 20-1 at 36). Nonetheless, the City argues that Plaintiff is unable to demonstrate the but-for cause of her termination, as explained below.

7

requisite causal link because: (1) Cassady eliminated Plaintiff's job for non-discriminatory reasons; (2) Cassady contemplated eliminating Plaintiff's job before she filed her EEOC Charge; and (3) there was a five-month gap between the EEOC Charge and Plaintiff's termination, which does not constitute sufficient temporal proximity.

"[I]n a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago*, 453 F.3d at 1308; *Smith*, 565 F. App'x at 779. As the Supreme Court has held, "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (rejecting inference of causation based on temporal proximity).

The City presents unrebutted evidence, from Rosetti, that Cassady considered eliminating Plaintiff's position as early as March 22, 2011, prior to Plaintiff's filing of the EEOC Charge on May 17, 2011. (Dkt. 18-1). Although Plaintiff argues that Cassady did not formally submit his proposal to Connors until September 2011, and that her position was not actually reclassified until February 2012, those facts do not call into question Rosetti's evidence that Cassady considered Plaintiff's position for elimination prior to the EEOC Charge.[3] As a result, any temporal proximity

---

[3] Plaintiff also notes that Connors and Cassady provide differing accounts as to when Cassady recommended Plaintiff's position for elimination: Cassady testified that he spoke with Connors in January or February 2011, and Connors testified that the conversation occurred in August or September 2011. (Dkt. 20-1 at 10; Dkt. 19-1 at 20). Regardless, it is undisputed that Cassady did consider Plaintiff's position for elimination in March 2011, based on Rosetti's affidavit and the spreadsheet reflecting that proposal. (Dkt. 18-1).

between Plaintiff's termination and the EEOC Charge – or the EEOC mediation – is immaterial. *Clark Cnty. Sch. Dist.*, 532 U.S. at 272; *Drago*, 453 F.3d at 1308; *Kelley v. City of Albuquerque*, 542 F.3d 802, 816 (10th Cir. 2008) (holding that defense attorney's participation in mediation was protected activity under Title VII).

In addition to temporal proximity, Plaintiff relies on Bynum's testimony that Cassady terminated Plaintiff and three other employees "because they were thorns in his side, and he had to save face." (Dkt. 27 at 5). As an initial matter, this statement does not disclose any facially retaliatory motive and is therefore not direct evidence of discrimination. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528, n. 6 (11th Cir.1987). A factfinder could, however, reasonably conclude that Cassady considered Plaintiff to be "a thorn in his side" due to her filing of an EEOC Charge. First, the EEOC Charge was based, in part, on Cassady's conduct. Second, Cassady testified during his deposition that Plaintiff's job was *not* eliminated due to deficient performance or a personality conflict, suggesting that he may instead have considered Plaintiff to be "a thorn in his side" due to the allegations contained in the EEOC Charge. Third, although Cassady originally identified Plaintiff's position for elimination prior to the EEOC Charge, he testified that, by August 2011, it was not a definite conclusion that her job would be eliminated. (Dkt. 20-1 at 39-40). By that point, Cassady was aware of the EEOC Charge. Accordingly, there is at least a reasonable inference that, when Cassady submitted his formal request to eliminate the four positions on September 26, 2011 – less than two weeks after the EEOC mediation – Cassady did so due to Plaintiff's participation in the EEOC proceedings.

2. *Non-discriminatory reason and pretext*

Having established a *prima facie* case, the burden shifts to the City to produce a non-

discriminatory reason for the adverse employment action. *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002). The City maintains that Plaintiff was terminated because her position was no longer needed due to the City's adoption of a paperless work order system. (Dkt. 18 at 9). In particular, Cassady testified that over fifty percent of Plaintiff's job duties involved filing paper, and paper filing had ceased. (Dkt. 20-1 at 4).

Because the City articulates a non-discriminatory reason for terminating Plaintiff, the burden shifts back to Plaintiff to show that the City's reason is pretextual. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (internal quotation marks omitted); *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1346 (11th Cir. 2000). For instance, a plaintiff may point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks omitted). However, "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions," and a plaintiff may not establish pretext merely by quarreling with the wisdom of an employer's decision. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (internal quotation marks and alteration omitted).

In this case, Cassady's purported statement to Bynum directly contradicts the City's stated reason for Plaintiff's termination, and it therefore provides sufficient evidence of pretext. Specifically, if a reasonable factfinder credits Bynum's testimony, Cassady recommended Plaintiff for termination not because of a decrease in her job duties or as an efficiency measure, but because

she was "a thorn in his side." As explained above, a factfinder could also infer, from the record as a whole, that Cassady had a retaliatory motive in recommending Plaintiff's job for elimination.

Plaintiff proffers additional evidence that she contends shows the City's reason is pretext for unlawful discrimination, including evidence regarding historical racism in the Water Resources Department, based on the testimony of Isleyn Boyd, a union representative, and Latishia Staley, a former employee. (Dkt. 25 at 3-7; *e.g.*, Dkt. 32 at 4, 14-15, 20-21; Dkt. 30 at 3, 7, 22-23, 30-31). The City does not challenge the admissibility of this evidence on evidentiary grounds, though it correctly observes that statistics "without an analytic foundation, are virtually meaningless." *Brown v. Am. Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir. 1991); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). Plaintiff also maintains that data entry tasks are still being performed in the Department (Dkt. 35 at 5-7; Dkt. 29 at 9; Dkt. 27 at 20-21), but that fact is of limited probative value, as Plaintiff does not dispute that paper filing — the majority of her job duties, according to Cassady – had ceased. Likewise, Plaintiff cites the delay in reclassifying her position, but she does not explain how this undercuts the City's stated reason for her termination. *Cf. Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) (explaining that an employer's deviation from standard procedures may serve as evidence of pretext).

Although Plaintiff's remaining evidence of pretext is less persuasive, she creates a jury issue on pretext based on Bynum's testimony. That testimony would permit a reasonable factfinder to conclude that Plaintiff's termination was based on her protected activity. *Booth*, 757 F.3d at 1207 ("if the jury was permitted to disbelieve the County, it may have been permitted to infer that the County's actions were retaliatory"). A reasonable factfinder could, of course, alternatively conclude that the City fired Plaintiff in connection with a legitimate reorganization of the Water

Resources Department – or even based on Cassady's opinion that Plaintiff was not friendly enough – motivations that would not subject the City to liability. *See Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("[t]he employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"). Because reasonable minds could differ, the City's motion for summary judgment is denied as to Plaintiff's claimed violations of the FCRA and Section 1981 (Counts I and II).

## *Conclusion*

Based on the foregoing, it is **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 18) is **DENIED**.

**DONE AND ORDERED** this 8th day of June, 2015.

                                                          **JAMES D. WHITTEMORE**
                                                          **United States District Judge**

Copies to:
Counsel of Record